### Susman Godfrey L.L.P.
a registered limited liability partnership
15th Floor
560 Lexington Avenue
New York, New York 10022-6828
(212) 336-8330
Fax (212) 336-8340
www.susmangodfrey.com

_____

| | | |
|---|---|---|
| Suite 5100<br>1000 Louisiana Street<br>Houston, Texas 77002-5096<br>(713) 651-9366 | Suite 950<br>1901 Avenue of the Stars<br>Los Angeles, California 90067-6029<br>(310) 789-3100 | Suite 3800<br>1201 Third Avenue<br>Seattle, Washington 98101-3000<br>(206) 516-3880 |

William Christopher Carmody
Direct Dial (212) 336-8334

E-Mail BCarmody@susmangodfrey.com

September 7, 2016

VIA CM/ECF AND HAND DELIVERY

The Honorable Naomi Reice Buchwald
United States District Judge
500 Pearl Street
New York, New York

Re:   *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-MD-2262 (NRB)

Dear Judge Buchwald:

We write on behalf of OTC Plaintiffs, Exchange-Based Plaintiffs, and Lender Plaintiffs ("Class Plaintiffs") to compel production of highly relevant documents that were subpoenaed from a third party broker, Tradition America LLC ("Tradition"). Although there is direct evidence of Tradition's involvement in the conspiracy to suppress LIBOR, Tradition refuses to comply with narrow requests tailored to elicit those additional, highly relevant documents.

Brokers like Tradition played a key role in Defendants' conspiracy. Defendants used brokers to share their *planned* LIBOR bids with each other and coordinate their conspiracy to suppress LIBOR. For example, to support its conclusion that Plaintiffs sufficiently alleged the existence of a conspiracy, the Second Circuit relied heavily on evidence that Barclays "knew, in advance of the submission deadline, the proposed confidential submissions of *every USD LIBOR panel bank*" — information that enabled Barclays to suppress its submission by 20 basis points to keep in line with what the other banks were going to do. *See Gelboim v. Bank of America*, 823 F.3d 759, 781 n.19 (2d Cir. 2016). Documents produced in discovery reveal that many brokers, like Tradition, helped the banks collusively exchange their planned LIBOR submissions. These are the very type of documents that Class Plaintiffs have sought from Tradition, but which Tradition refuses to produce.

On May 10, 2016, each of the Class Plaintiffs served an identical subpoena to Tradition. *See,*

September 7, 2016
Page 2

*e.g.*, Ex. A (OTC Plaintiffs' subpoena).  On Tradition's request, and in the spirit of cooperation and compromise, Plaintiffs narrowed their requests to the following[1]:

1. Documents reflecting or relating to communication of anticipated or actual daily USD LIBOR Submissions by USD LIBOR Panel Banks, or "Runthroughs";
2. Documents regarding actual, attempted, or suspected manipulation or suppression of USD LIBOR, USD LIBOR Setting, or any USD LIBOR Panel Banks' USD LIBOR Submissions;
3. Documents regarding the actual or suspected inaccuracy of USD LIBOR, USD LIBOR Setting, or any USD Panel Banks' USD LIBOR Submissions; and
4. Any documents provided to any government regulator pertaining to USD LIBOR.

Ex. B at 7.  Plaintiffs also narrowed the time period for requested documents to August 1, 2006, through May 31, 2011, and provided Tradition with additional information regarding their case and the basis for their belief that Tradition possessed information relevant to their claims.  *Id.* at 7–9.  Throughout this period, Class Plaintiffs several times requested a telephonic meet and confer, but were rebuffed or ignored on each attempt (June 29, July 1, July 5, July 11, and July 21).  *See id.* at 3, 6, 7, 9–10, 11–12.

After Class Plaintiffs' fifth attempt to meet and confer on July 21, 2016, Tradition served formal responses and objections to Class Plaintiffs' subpoenas.  *See, e.g.*, Ex. C (response to OTC Plaintiffs' subpoena).  Although Tradition agreed to produce some documents responsive to the subpoena (including documents that Plaintiffs are no longer seeking under their narrowed requests[2]), Tradition wholly objected to the production of documents responsive to narrowed request nos. 1–3 above, which are the central documents in this case.  *Id.* at 5–7.  Following receipt of Tradition's responses and objections on July 21, Class Plaintiffs twice again asked Mr. Levin to meet and confer.  Ex. B at 2; Ex. D at 1.  In total, Mr. Levin has now refused a total of **seven separate requests** by Plaintiffs to meet and confer.[3]  *See Dorchester Fin. Holdings Corp.*

---

[1] For the Court's reference, a table matching Class Plaintiffs' narrowed requests and original subpoena requests is provided below.  Subpoena request no. 16 is responsive to both narrowed request nos. 1 and 2.

| Narrowed Request No. | Subpoena Request No. |
|---|---|
| 1 | 7–8 |
| 2 | 10–16 |
| 3 | 16 |
| 4 | 20–22 |

Exchange-Based Plaintiffs additionally request transactions related to Eurodollar futures, options, and spreads.

[2] Given Tradition's refusal to meet and confer, Class Plaintiffs object to any attempts at cost-shifting, particularly with respect to documents no longer within the scope of Plaintiffs' requests.

[3] Mr. Levin's most recent email to Class Plaintiffs stated that he had "at least one lengthy telephone conference" on this matter.  Ex. B at 1.  Months ago, Mr. Levin spoke once on the phone regarding procedural matters with counsel for Exchange Plaintiffs.  To this day, Mr. Levin has refused to meet and confer jointly with all Class Counsel regarding the substantive scope of the three subpoenas.  Moreover, Mr. Levin's assertion that Class Plaintiffs have ignored Tradition's requests for additional clarity cannot be reconciled with his steadfast refusal to

September 7, 2016
Page 3

*v. Banco BRJ, S.A.*, No. 11-CV-1529 KMW KNF, 2014 WL 3747160, at *4–5 (S.D.N.Y. July 3, 2014) ("The meet-and-confer requirement mandates that parties actually meet, in person or by telephone, and make a genuine effort to resolve the dispute . . . .").

The documents requested in Class Plaintiffs' narrowed request nos. 1–3 are clearly relevant to Plaintiffs' allegations. Narrowed request nos. 2 and 3, concerning manipulation, suppression, and inaccuracy of LIBOR, are relevant on their face. Narrowed request no. 1 concerns broker run-throughs, which are one means by which LIBOR quotes were communicated between and among the panel banks prior to submission to the BBA, and Class Plaintiffs have uncovered evidence in Defendants' government productions directly implicating Tradition brokers based in New York and London. These brokers acted as intermediaries (or a "hub") to share panel banks' intended LIBOR submissions, and therefore formed a key component of the overall conspiracy to suppress LIBOR. Plaintiffs can provide supporting documents to the Court under seal.

Notably, Tradition's specific objections to narrowed request nos. 1–3 (subpoena request nos. 7–8 and 10–16) do *not* challenge the relevance of these requests, but rather discuss scope and the alleged burden on Tradition. These concerns are precisely why Class Plaintiffs have sought to meet and confer with Tradition for the past three months — Class Plaintiffs wish to, *inter alia*, discuss search terms and the locations or custodians of electronically stored information in order to minimize any burden associated with Tradition's production. Unfortunately, Plaintiffs' efforts have been consistently rebuffed.

Class Plaintiffs respectfully request that the Court compel compliance with the subpoenas served upon Tradition, as narrowed above. Class Plaintiffs further request that the production include documents physically held or maintained by Tradition's foreign affiliates, but which would be reasonably accessible to Tradition upon request, and are thus within Tradition's possession, custody, and control. *See Ssangyong Corp. v. Vida Shoes Int'l, Inc.*, No. 03 CIV.5014 KMW DFE, 2004 WL 1125659, at *3–4 (S.D.N.Y. May 20, 2004) ("Under Rule 34 and Rule 45, the word 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action. . . . If the nature of the relationship between the parent and its affiliate is such that the affiliate can obtain documents from its foreign parent *to assist itself in litigation*, it must produce them for discovery purposes."); *cf. Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919–20 (S.D.N.Y. 1984) (finding it "inconceivable" that domestic subsidiary of foreign parent could not, as a practical matter, gain access to requested documents, as "[t]he fact that the documents are situated in a foreign country does not bar their discovery").

Respectfully,

*/s/ William Christopher Carmody*
William Christopher Carmody

---

meet and confer. Class Counsel has sought for months to provide Mr. Levin with the requested clarity through the meet and confer process.